# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOSEPH R. BANISTER,<br><br>　　　　　　　　Plaintiff,<br>　v.<br>UNITED STATES OF AMERICA,<br><br>　　　　　　　　Defendants. | Case No. 3:12-cv-00637-MMD-VPC<br><br>ORDER |

## I. SUMMARY

Before the Court are Joseph Banister's ("Banister") Motion for Summary Judgment (dkt. no. 41) and the United States' ("Government") Partial Motion for Summary Judgment (dkt. no 42.).[1] The Court has also reviewed the parties' respective responses and replies. (Dkt. nos. 43, 44, 45, 46.) For the reasons set out below, the Government's Motion is granted in part and denied in part, and Banister's Motion is denied.

## II. BACKGROUND

Joseph Banister is an accountant and former Internal Revenue Service ("IRS") special agent. The IRS assessed 12 penalties against Banister pursuant to 26 U.S.C. § 6701, which allows the IRS to fine any person who aids in the preparation of documents

---

[1]The Government attached the statement of undisputed facts as an exhibit to its Motion instead of incorporating the statement into its Motion. The two filings total 52 pages. The Court views this as an improper attempt to circumvent LR 7-4's limit on the length of briefs. However, the Court will not strike the Government's statement of facts.

with the intent to understate tax liability. Banister paid 15% of the penalties under protest, and filed this suit to challenge the imposition of fines and recover his deposit. (Dkt. no. 1.) The Government asserted a counter claim for the remainder of the assessments imposed against Banister. (Dkt. no. 18.)

The 12 penalties at issue stem from the assistance Banister provided to several clients between the years of 2000 and 2002. The Government alleges that Bannister promoted and aided clients in asserting frivolous theories which they believed made their wages and income exempt from federal taxation. Banister's most common argument (the "861 Theory") was that citizens were not liable for federal tax because Internal Revenue Code ("IRC") §§ 861-865 and their derivative regulations defined "source of income" in a way that excluded his clients' incomes. This theory has been considered and rejected by a number of courts. (Dkt. no. 42-37 at 32-35.)

From January to April of 2000, Bannister aided Walter and Denise Thompson in their preparation of federal income tax returns and amended returns. (Dkt. no. 42-45 ¶¶ 28-29.) The Thompsons asserted that they had no taxable income. (*Id.* ¶ 29)  Bannister sent a letter to the IRS on April 20, 2000, asserting that the Thompsons had no taxable income. (*Id.* ¶ 30.) The IRS sent a letter asserting that the Thompsons' returns were frivolous, and that the "U.S. Tax Court and other federal courts have rejected" Bannister's argument repeatedly. (*Id.* ¶¶ 30, 31.) Bannister replied to the IRS with an additional letter on August 19, 2000, asserting that the Thompsons should not be subject to penalties because their position was "supported by the plain language of" the IRC and the Code of Federal Regulations (CFR). (*Id.* ¶ 32.) The IRS also assessed a penalty based on the claim that Banister aided Thompson in preparing a 941 employment tax return relating to a company called Cencal Aviation. (Dkt. no. 41 at 6.) Banister maintains that he did not assist in that return. (*Id.* at 7.)

///

///

///

1  On July 26, 2000, Bannister represented a client named Frank Coleman at a Collection-Due-Process[2] hearing in front of the IRS. At the hearing, Bannister presented a number of documents alleging that Coleman owed no income tax under the same theory. (*Id.* ¶¶ 33-34.) Later that year, in October, Bannister advised a client named Thomas Clayton, who filed two tax returns which claimed zero taxable income based on the 871 Theory. (*Id.* ¶¶ 77-84.)

The Government alleges Bannister made the same arguments at three October, 2001, Collection-Due-Process hearings for Jack and Lois Passadore (*id.* ¶¶ 44-46.), Kenneth Logie (*id.* ¶ 47.), and Thomas Graham (*id.* ¶ 67.)

At similar hearings in 2002, Bannister represented clients named Russel Spilker and Kenneth Guthery. The Government claims Bannister produced documents reiterating his 861 Theory and asserting that Spilker had no taxable income. (*Id.* ¶¶ 37-40.) On Guthery's behalf, Bannister wrote letters to the IRS indicating that Guthery's "Individual Master File" needed to be corrected, and that Guthery was under no obligation to file return because the IRS has no authority to create a substitute tax return. (*Id.* ¶¶ 53-60.) This argument was contrary to case law. (Dkt. no 42-37 at 28-29.)

The IRS Office of Professional Responsibility began proceedings to disbar Bannister from practicing before the IRS in March of 2003. In November of 2013, an administrative law judge ("ALJ") ruled in favor of the IRS. The decision was affirmed by the Secretary of the Treasury ("the Secretary"), and then by the U.S. District Court for the Northern District of California and the Ninth Circuit Court of Appeals. *Banister v. U.S. Dep't of the Treasury*, No. C 10-02764 JW, 2011 WL 7109220, at *1 (N.D. Cal. Mar. 10, 2011) aff'd, 499 F. App'x 668 (9th Cir. 2012). The Ninth Circuit specifically held that "by advising clients that they did not have to pay taxes based on positions that he could not

---

[2] A Collection-Due-Process Hearing is a statutorily mandated hearing that must occur in front of the IRS Office of Appeals before a levy is made on a taxpayer's property. At the hearing, the taxpayer may raise any issue relating to the unpaid tax, including challenging the appropriateness of the collection action. See 26 U.S.C. § 6330(c).

in good faith have believed to be consistent with the law, Banister violated [IRS regulations]." 499 F. App'x at 671.

### III. LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements,

the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

## IV.  DISCUSSION

Banister claims entitlement to summary judgment in his favor because he lacked the requisite mens rea, 26 U.S. C. § 6701 does not extend to any conduct during a Due Process Collection hearing, and individual factors unique to each of his clients.  The Government seeks summary judgment on 11 of the 12 penalties assessed for Banister's conduct. The parties' motions raise several threshold issues which the Court will resolve first.

### A.   Evidentiary Objections

Banister urges the Court to disregard 4 transcripts submitted with one of the Government's declarations. (Dkt. no. 43 at 12-16.) Banister argues that the transcripts are inadmissible because they violate the best evidence rule, which requires "[a]n original writing, recording, or photograph . . . to prove its content unless [the Federal Rules of Evidence] or a federal statute provides otherwise." Fed. R. Evid. 1002. The Government contends that the transcripts are admissible under Federal Rule of Evidence 1004, which allows a party to offer a reproduction of a recording if "all originals are lost or destroyed, and not by the proponent acting in bad faith," among other exceptions. Fed. R. Evid. 1004(a).

"The burden of proving loss or destruction under Rule 1004 is on the proponent of the evidence." *Seiler v. Lucasfilm, Ltd.*, 613 F. Supp. 1253, 1260 (N.D. Cal. 1984), *aff'd*,

808 F.2d 1316 (9th Cir. 1986). The Government has not met its burden. Rather, in its reply brief, the Government notes that it informed opposing counsel of the tapes' loss, that it relied on the contested transcripts to refresh witnesses' recollections during depositions, and that it produced one tape to opposing counsel in May 2014. (Dkt. no. 46 at 3.) These arguments, without any evidence offered to support them, are insufficient to prove the loss or destruction of the tapes. The Court will not consider the transcripts in deciding the motions for summary judgment.[3]

### B. Issue Preclusion

The Government argues that Banister's disbarment hearing before the IRS precludes him from re-litigating liability for preparing tax returns and presenting documents based on the 861 Theory in regards to Thompsons and Coleman. "A party invoking issue preclusion must show: 1) the issue at stake is identical to an issue raised in the prior litigation; 2) the issue was actually litigated in the prior litigation; and 3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *Littlejohn v. United States*, 321 F.3d 915, 923 (9th Cir. 2003). Issue preclusion is not limited to courts, but can extend to fact findings from administrative agencies. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015) ("[W]here a single issue is before a court and an administrative agency, preclusion also often applies.) However, the administrative hearing at issue must involve adequate notice, the right to present and rebut evidence, a final decision, and other procedural safeguards. *Id.* (citing Restatement (Second) of Judgments § 83 (1982)).

The Court will first address whether the prior litigation contains the necessary procedural safeguards. Banister was represented by counsel at the IRS hearing. The district court and Ninth Circuit decisions affirmed the procedural sufficiency of the IRS

---

[3]To be clear, the Court has ruled that the transcripts, as presented in the Government's Partial Motion for Summary Judgment. This does not mean that the Government cannot use the evidence at trial if properly presented.

1  proceedings, including the sufficiency of notice and Banister's ability to present and
2  rebut evidence. *Banister*, 2011 WL 7109220, at *3-5.

3  Banister's main argument against application of issue preclusion is the identity of
4  the issue. Banister claims that because his disbarment hearing required a lower proof of
5  scienter than the "knowledge" standard required under 26 U.S. C. § 6701, issue
6  preclusion cannot apply. However, Banister is incorrect that the IRS proceedings did not
7  involve the same mens rea — a knowledge requirement.  §10.51(a) of Treasury Circular
8  230 provides an accountant may be disbarred for "knowingly counseling or suggesting to
9  a client or prospective client an illegal plan to evade Federal taxes." §10.51(j) of
10 Treasury Circular 230 also includes: "giving a false opinion, knowingly, recklessly or
11 through gross incompetence . . . False opinions described in this paragraph include
12 those which result . . . from an assertion of a position known to be unwarranted under
13 existing law." (Dkt. no 42-37 at 22.)[4]

14 The ALJ found that "it was not believable at all" that Banister was unaware that
15 the positions he was taking (including the 871 Theory) were frivolous. (Dkt. no. 42-36 at
16 8.) The Secretary's decision affirming the ALJ found that "[Banister's] conduct was willful
17 and knowing . . . and had been proven by clear and convincing evidence." (Dkt. no. 42-
18 37 at 53.) The district court affirmed the ALJ decision that Banister's positions were "so
19 objectively unreasonable that it would be impossible to hold them in good faith." *Banister
20 v. U.S. Dep't of the Treasury*, No. C 10-02764 JW, 2011 WL 7109220, at *4 (N.D. Cal.
21 Mar. 10, 2011). And finally the Ninth Circuit similarly "view[ed] the universal dismissal of
22 Banister's Section 861 position, coupled with his experience at the IRS and extensive
23 research, as clear evidence" that his arguments were made in bad faith. 499 F. App'x at
24 670.

25 ///
26 ///

---

[4] The Secretary's decision contains an exhaustive discussion of the relationship between "knowledge" and "willful" requirements as they relate to Treasury Circular 230. (Dkt. no. 42-37 at 40-53.)

7

The Court finds that the *Littlejohn* factors are satisfied. The issue of whether Banister knowingly assisted in the creation of documents that would understate tax liability was at stake in the previous litigation. As the record shows, the issue was also actually litigated at length, and the determination of the issue was a critical part of the judgment. Therefore, Banister is precluded from relitigating the mens rea element in this case.

**C.   Interpretation of § 6701**

Bannister asks the Court to read 26 U.S.C. § 6701 to exclude any conduct during a Due Process Collection hearing, because the purpose of such hearings is to consider collection alternatives rather than change or amend tax liability, and the topic of such hearings are penalties rather than taxes. (Dkt. no. 41 at 12-13.) Consequently, Banister argues, the fines based on Banister's representations of Coleman, the Grahams, the Passadores, the Logies, and Spilker should be disallowed, because they stemmed from Banister's behavior during the Due Process Collection hearings. The Government argues that Banister's interpretation is not supported by any case law, runs contrary to the language and purpose of the statute, and is inapplicable because even if the purpose of the hearings was to explore collection alternatives, Banister's arguments were that his clients owed no tax. (Dkt. no. 44 at 6.)

§ 6701 reads as follows in relevant part:

(a) Imposition of penalty

Any person –

>   (1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document,
>
>   (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and
>
>   (3) who knows that such portion (if so used) would result in an understatement of the liability for tax of another person,

shall pay a penalty with respect to each such document in the amount determined under subsection (b).

8

26 U.S.C. § 6701(a). The flaw in Banister's argument is his assumption that, in order to be liable under § 6701, a person must have a chance to successfully alter another's tax liability. The plain language of the statute only requires "an understatement of the liability." 26 U.S.C. § 6701(a)(3). In other words, the statute seeks to prevent people from aiding in the fraudulent preparation of documents, whether or not those documents could ultimately be successful in altering a person's tax liability.

Banister also argues that because Congress adopted language in 2006 to specifically penalize frivolous submissions at the Collection Due Process hearings, the Court should understand the older language to exclude any conduct at those hearings. (Dkt. 45 at 4.) Though this fact is consistent with Banister's reading of the statute, it does not require such a reading. Absent any clear reason to do so, the Court will not wander beyond the plain meaning of the statute. *See Coronado-Durazo v. I.N.S.*, 123 F.3d 1322, 1324 (9th Cir. 1997) ("Where the plain meaning of a provision is unambiguous that meaning is controlling.") (internal quotations omitted).

Banister's distinction between taxes and penalties is also unconvincing. The IRC includes penalties in its definition of tax.  26 U.S.C. § 6665(a)(2); 26 U.S.C. § 6671. Banister attempts to circumvent this definition by positing that the phrase "imposed by this title" in § 6671(a) alters the word tax in such a way that it's application in § 6701 cannot include penalties. This impressive piece of mental gymnastics fails to stick the landing. A reading of the plain language of § 6671(a) includes "penalties and liabilities" in the definition of tax used in § 6701. Where the plain meaning of a statute is clear, a court does not need to read between the lines. *Coronado-Durazo* 123 F.3d at 1324.

### D. Penalties

#### a. Walter & Denise Thompson

The parties both move for summary judgment based on the penalties imposed on amended income tax returns for the Thompsons for the years 1996, 1997 and 1998. Banister additionally moves for summary judgment for the penalties imposed due to Walter Thompson's Cencal Aviation employment tax return.

For the reasons discussed above, Banister is precluded from relitigating the fact that he knowingly helped the Thompsons understate their tax liability. The Government's Motion is granted with respect to the 1996, 1997, and 1998 Thompson returns.

### b. Thomas Clayton

The Government asserts that Banister advised Clayton about his 861 Theory, and he reviewed and provided feedback on a letter Clayton sent to the IRS asserting the 861 Theory. The Government cites emails, letters, and deposition testimony in support of their position. (Dkt. no. 42-25 ¶¶ 77-85.) Specifically, they offer a letter from Banister to Clayton indicating that Banister's experiences and research have lead him to conclude that IRS does not have authority to collect income tax. (Dkt. no 42-27.) The letter goes on to state that the decision not to file is Clayton's alone and that Banister can only "do [his] professional best to give [Clayton] important information [Clayton] may need to make that decision." (*Id.*) Clayton then filed two amended income tax returns claiming zero income based on the 861 Theory. (Dkt. no. 42-25 ¶¶ 83-84.)

Banister agrees that Clayton was a client, but argues that he did not provide any advice or assistance in regards to the amended tax returns upon which the IRS penalty is based. Banister points to Clayton's deposition testimony, wherein Clayton himself claims that Banister did not help him with his returns or introduce the 871 Theory to him. (Dkt. no. 41 at 7-8.) The parties have presented conflicting evidence which makes summary judgment in either party's favor improper.

### c. Frank Coleman

For the reasons discussed above, Banister is precluded from relitigating the finding that he knowingly aided Coleman in understating his tax liability. Therefore, the Government's Motion is granted with respect to Coleman.

### d. Kenneth Guthery

Banister represented Guthery in 2002. The Government argues that after Banister was retained, Guthery sent an affidavit to the IRS claiming that he did not owe any income tax. (Dkt. no. 42-25 ¶ 52.) Additionally, Banister sent a lengthy document entitled

"Analysis of Individual Master File" to the IRS on Guthery's behalf. (Dkt. no. 42-20.) The letter asserted "where no notice [of tax liability] was served by the District Director, then the individual is under no obligation to file." (*Id.* at 18.) The letter, commonly called a "decoder," contained statutory arguments that courts have repeatedly struck down. (Dkt. no. 42-46 at 29.)

Banister argues that his only intention was to point out errors in the IRS's system, rather than to reduce or eliminate the Guthery's tax liability. He cites only his own testimony in support of his position.

Even drawing all factual inferences in Banister's favor, the Government is entitled to summary judgement. Banister's claim that he was innocently trying to correct Guthery's record is belied by the wording of his letter, which wrongly argues that someone like Guthery is under no obligation to file absent notice from an IRS District Director. No reasonable juror could find that Banister was not advancing an argument to understate his client's tax liability, and therefore the Government's Motion is granted.

### e. Thomas Graham

The Government argues that Banister represented Graham at a Collection Due Process hearing wherein he presented a letter arguing that the 871 Theory meant Graham owed no income tax. The Government further claims that Banister sent a letter to the IRS after the hearing disputing the denial of his 871 Theory. (Dkt. no. 42-22.) In that letter, Banister stated that the hearing officers had refused to consider evidence in support of his client's position, "including evidence that your statements about Section 871 arguments having been litigated and unavailable for use in this case were false." (Dkt. no. 42-22 at 2.)

Banister does not dispute that he presented a letter asserting the 871 Theory. However, he argues that the purpose of the letter was to make certain documents part of the hearing record, rather than alter any assessment. (Dkt. no. 43 at 10.)

Once again Banister's position is contradicted by his written statements. No reasonable juror could find that Banister's intention at the Collection Due Process

hearing was to simply build a record rather than advocate for the positions contained in the documents he presented. The Government's Motion is granted as to Graham.

### f. Jack Passadore, Kenneth Logie, Russel Spilker, & Cencal Aviation

The only evidence the Government cites in support of its claims in regards to Passadore, Logie, and Spilker is from the hearing transcripts that the Court found inadmissible to support the Government's Motion. Therefore, the Government's Motion is denied on these claims.

Banister argues that because 26 U.S.C. § 6703 places the evidentiary burden on the Government in any proceeding imposing penalties under § 6701, and the evidence it presented at summary judgment was inadmissible, he is entitled to summary judgment on these claims, as well as his claim related to Cencal Aviation. However, this misstates the mechanics of summary judgment. The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *Id.* at 322–23.

Banister's Motion does not meet the first burden in any of these cases. First, Bannister's Motion seems to suggest that he never represented Logie. (Dkt. no 41 at 11.) This, of course, signals a dispute of material fact rather than an absence. Banister's arguments with regard to Spilker and Passadore, to the extent that they do not rely on his incorrect interpretation of § 6701, simply point that out the Government's documents are inadmissible in summary judgment. (Dkt. no. 45 at 6.) In short, Banister's arguments in favor of his own Motion are in actuality arguments against the Government's Motion.

In regards to Thompson's Cencal Aviation employment tax returns, Banister cites his own deposition testimony, wherein he denies advising Thompson on his Third Quarter 2000 return. (Dkt. no. 41 at 7.) The Government cursorily responds in a footnote that they have offered evidence, though the Government does nothing to explain or

contextualize this evidence. (Dkt. no. 44 at 5.) Once again, however, Banister's simple assertion that he did not aid in the preparation Thompson's employment tax forms does not eliminate any dispute of material facts, it indicates one. Furthermore, the Government produced emails from Thompson to Banister that, when viewed in the light most favorable to the Government, could support reasonable inference that Banister was involved in Thompson's filing. (Dkt. no. 44-2 at 2-4.)

### E. Summary

The Court grants summary judgment in favor of the Government with respect to Banister's representations on behalf of Coleman, Guthery, and Graham, and on behalf of Thompson on all issues except the Cencal Aviation return. The Court denies summary judgment to both parties with respect to Banister's representations on behalf of Clayton, Passadore, Logie, Spilker, and with respect to the Cencal Aviation return.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motions.

It is therefore ordered that the Government's Motion for Partial Summary Judgment (dkt. no. 42) is granted in part and denied in part.

It is further ordered that Banister's Motion for Summary Judgment (dkt. no. 41) is denied.

DATED THIS 30th day of September 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE